1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

**LYNN RUIZ,**

**CASE NO. 1:21-CV-1555 JLT CDB**

12

**Plaintiff**

13

**v.**

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

14

**CONDUENT COMMERCIAL SOLUTIONS, LLC, and DOES 1-50, inclusive,**

15

(Doc. 6)

16

**Defendant**

17
18
19

        This is a putative class action lawsuit brought by Lynn Ruiz against her current employer

20

Conduent Commercial Solutions, LLC.  CCS removed this case from the Kern County Superior

21

Court.  Ruiz alleges two claims under California law:  Labor Code § 2802[1] and the Unfair

22

Competition Law (Cal. Bus. & Prof. Code § 17200).  CCS seeks to compel the action to

23

arbitration.  For the reasons that follow, Defendants' motion is **GRANTED,** and the case will be

24

stayed.

25

**FACTUAL BACKGROUND**

26

        Ruiz was hired to work for CCS in May 2019 as a customer care representative.  CCS is a

27
28

---

[1] This provision requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . ."  Cal. Lab. Code § 2802(a).

wholly owned subsidiary of Conduent Business Services, LLC.  CBS and CCS provide a full

range of outsourcing services and solutions to businesses.  Ruiz applied for a position on-line on

May 7, 2019.

As part of the on-line application process, Ruiz was required to click a box that stated: "I

agree to the terms of this Agreement and to be bound by the [CBS] Dispute Resolution Plan and

Rules."  This box appeared under the heading "Dispute Resolution Plan Consent."  A pop-up

appeared on Ruiz's screen that contained the Dispute Resolution Plan.  Ruiz declared that the DRP

appeared to be many pages long and in small print.  The DRP was entitled "The Conduent

Business Services, LLC Dispute Resolution Plan & Rules."  In relevant part, the DRP provides:

> 1.    Purposes and Construction
> The DRP is designed to provide a program for the quick, fair, accessible, and
> inexpensive resolution of all Disputes, as defined hereafter, between the Company
> and [CBS] Employees and Applicants for employment, including but not limited to
> those Disputes related to or arising out of a current, former or potential
> employment relationship with [CBS].  The DRP is intended to create an exclusive
> and mandatory procedural mechanism for the final resolution of all Disputes falling
> within its terms.  It is not intended to either abridge or enlarge substantive rights
> available under applicable law, provided however that the Parties forgo any right
> they may have to trial by court (including a jury trial) on matters relating in any
> way to any Dispute . . . The DRP should be interpreted in accordance with these
> purposes.
>
> 2.    Definitions
> . . . . .
>
> D.    "Company" means Sponsor and every subsidiary (first tier and
>       downstream) of Sponsor, every parent corporation or affiliate,
>       predecessor, and all of their directors, officers, employees . . .
>
> E.    "Dispute" means all legal and equitable claims, demands, and
>       controversies, of whatever nature or kind, whether in contract, tort,
>       under statute, regulation, or ordinance, or some other law, between
>       persons (which include Employees, Applicants and the Company)
>       bound by the DRP  or by an agreement to resolve Disputes under the
>       DRP, or between a person bound by the DRP and a person or entity
>       otherwise entitled to its benefits, including, but not limited to, any
>       matters with respect to:
> . . .
>       2.    The employment . . . of an Employee, including but not
>             limited to the terms, conditions, or termination of such
>             employment with [CBS];
>       3.    Employee benefits or incidents of employment with the
>             Company (except for claims under an employee benefit or
>             pension plan . . .);
> . . .
>       7.    Any other matter related to or concerning the relationship

between the Applicant and the Company and/or the Employee and the Company alleging violation of any federal, state, or other governmental law, statute, regulation, or ordinance, or common law, or contract violation . . .

. . .

G.      "Employee" means any person who is or has been in the employment of [CBS] on or after the Effective Date of the DRP . . .

. . .

L.      "Sponsor" means [CBS].

M.      "Conduent Business Services" means [CBS], its subsidiaries, and/or their predecessors.

. . .

4.      Resolution of Disputes

. . .

B.      All Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial).  The Parties forego any right they may have to a bench trial or a jury trial on a Dispute.

C.      (i) To the extent allowed under the law, each Dispute not otherwise resolved by the Parties shall be arbitrated on an individual basis. Except for Disputes asserted by named plaintiffs or putative plaintiffs in a class, collective, consolidated or representative action pending in court before the Effective Date, neither an Employee nor the Company may initiate or participate in a Dispute on a class, collective, or consolidated basis, or in a representative capacity on behalf of other persons or entities that are claimed to be similarly situated.  An applicant may not participate in a class, collective, consolidated or representative Dispute that has been filed against the Company before the Applicant's first day of employment.  The arbitrator shall have no authority to arbitrate a Dispute as a consolidated, class, collective or representative action.

. . .

6.      Amendment

The DRP may be amended by Sponsor at any time by giving at least thirty (30) days' notice to current Employees, provided however that no amendment shall apply to a Dispute that was made known to the Company prior to the time the amendment becomes effective.  The version of the DRP that was in effect with respect to a particular Applicant or Employee on the date of the Employee's claim was made known to the Company shall apply to that Applicant or Employee's dispute.

7.      Termination

The DRP may be terminated by Sponsor at any time by giving at least thirty (30) days' notice of termination to current Employees.  However, termination shall not apply to a Dispute that accrued or became known to the Company prior to the effective date of termination.

8.      Applicable Law

3

Except to the extent, if any, that federal law requires the application of state law, [the Federal Arbitration Act] and federal law, including federal procedural law . . . shall apply to the DRP, and any proceedings under the DRP . . .  In any case in which the arbitrator must make a decision as to applicable law, the arbitrator's authority to decide the applicable law should be guided and determined by the law that would be applied by a U.S. District Court sitting at the place of the arbitration hearing . . .
. . .

10.    Exclusive Remedy
Unless otherwise required by law, proceedings under the DRP shall be the exclusive method by which Disputes are resolved.  Arbitration under the DRP shall be final and binding, subject only to review as provided for in the [Federal Arbitration Act]."
. . .

11.    Severability
The terms of the DRP are severable . . .  Where possible, consistent with the purposes of the DRP, any otherwise invalid provision or term of the DRP may be reformed and, as reformed, enforced.

Doc. 6-2 ("Odle Dec.") at Ex. 1.  Additionally, under the "Conduent Business Services Dispute Resolution Rules" section of the DRP, the DRP required that arbitration be performed by either AAA or JAMS.  See id.  This section further provided that "[t]o the extent consistent with the DRP, the arbitrator is expected to apply the Federal Rules of Civil Procedure to arbitration proceedings governed by the DRP."  Id.  At no point does the DRP identify CCS by name.

The application required applicants to agree to the terms of the DRP in order to be considered for employment.  Ruiz did not have the option of opting out of the DRP.  Ruiz believed that by clicking the box, the DRP would only apply to her application, not to her actual employment, and that the DRP would only apply if CBS was her employer.  Ruiz clicked the box to accept the DRP.

Ruiz was offered a position by CCS the same day she submitted her application.  The offer letter in part stated that "Conduent may change any term or condition of your employment at will; with or without cause or notice."

Ruiz was also provided additional paperwork as part of her employment, which was to be completed no later than June 2, 2019.  The first document, an "Offer Acknowledgment Form," identified CCS as her employer.  This form also stated that the "Company may change any term or condition of your employment at will; with or without cause or notice."  Ruiz also received an "Acknowledgment of Dispute Resolution" ("ADRP").  The ADRP's provisions mirrored the DRP,

4

<u>Cf.</u> Odle Dec. Ex. 1 <u>with</u> Odle Dec. Ex. 4, and expressly incorporated the entirety of the DRP.

<u>See</u> Odle Dec. Ex. 4 at p.8.  In part, the ADRP:  (1) requires submission of all disputes (as defined by the DRP) relating to, concerning, or arising out of Ruiz's employment with "Conduent," (2) waived the right to a bench or jury trial, (3) waived the right to initiate or participate in arbitration of a dispute on a class, collective, consolidated, or representative basis, (4) gave "Conduent" the right to unilaterally modify or terminate the ADRP or the DRP by providing 30 days' notice provided that no modification would apply to a dispute that was made known to "Conduent" prior to modification and no termination would apply to a claim that accrued prior to termination of the ADRP or the DRP; (5) explained that references to "Conduent" included CBS and all of its subsidiaries; (6) contained a severability provision; (7) stated that acceptance of the ADRP was a condition of employment; and (8) stated that Ruiz's failure to sign the ADRP, or any attempt to reject the ADRP or the DRP, would not preclude enforcement of the DRP.  <u>See</u> Odle Dec. Ex. 4. Ruiz electronically signed the ADRP on May 7, 2019 and believed that it was an agreement between herself and only CBS.  Ruiz did not believe that the ADRP would involve any other company because she believed that only CBS was identified.  Ruiz was not informed that CCS was a subsidiary of CBS.

Ruiz was never provided the arbitration rules of the AAA or JAMS by CCS or CBS.  Ruiz was never given the opportunity to negotiate any terms of the arbitration agreements.  CCS never explained the DRP or ADRP to Ruiz, and she did not know what arbitration was when she signed the agreements.  Ruiz understood that CCS could change its policies, including the ADRP and the DRP, at any point, with or without notice.  Ruiz also believed that, per a Policies Acknowledgement statement that she signed, it was her responsibilities to hunt down changes because CCS would not inform her of policy changes.  The Policies Acknowledgment statement in part read: "I understand that changes to the policies may occur periodically (with or without notice) and it is my responsibility to keep informed of any changes."  Odle Dec. Ex. 5.

During her employment with CCS, Ruiz and other employees worked from home.  CCS provided laptops to Ruiz and other employees to complete their work at home for the benefit of CCS.  CCS did not reimburse Ruiz and other employees for their reasonable business expenses,

including use of personal cellphones, personal internet, and electricity.  CCS's failure to reimburse allegedly violated Labor Code § 2802 and was an "unlawful act" under the UCL.

**LEGAL FRAMEWORK**

The Federal Arbitration Act provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Zoller v. GCA Advisors, LLC, 993 F.3d 1198, 1201 (9th Cir. 2021).  Further, the FAA permits a party "aggrieved by the alleged . . . refusal to arbitrate" to petition any federal district court for an order compelling arbitration.  9 U.S.C. § 4; Van Dusen v. United States Dist. Court for the Dist. of Ariz., 654 F.3d 838, 842 (9th Cir. 2011).  When a party moves to compel arbitration, a district court's role is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Johnson v. Walmart Inc., 57 F.4t h 677, 680 (9th Cir. 2023) (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  If the answer to both questions is 'yes,' the district court must enforce the arbitration agreement in accordance with its terms; there is no place for discretion by the district court.  Revitch v. DIRECTV, LLC, 977 F.3d 713, 716 (9th Cir. 2020).  Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."  Granite Rock Co. v. International Bhd. Of Teamsters, 561 U.S. 287, 299 (2010); Revitch, 977 F.3d at 716. Doubts concerning the scope of an arbitration clause are resolved in favor of arbitration, but no presumption exists concerning whether an agreement to arbitrate was made.  Johnson, 57 F.4th at 680-81.  "When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation."  Suski v. Coinbase, Inc., 55 F.4th 1227, 1230 (9th Cir. 2022).  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that the parties formed an agreement to arbitrate.  Reichert v. Rapid Invs., Inc., 56 F.4t h 1220, 1227 (9th Cir. 2022); Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014).

1 **DEFENDANTS' MOTION**

2      As initial matter, the parties are somewhat unclear regarding the nature of the DRP and the

3 ADRP.  At some points, the parties' briefing suggests that these are two separate agreements, but

4 at other points, the briefing suggests that there is a single agreement to arbitrate.  After review, it

5 appears to the Court that the ADRP is both a synopsis of the DRP and a second acknowledgment

6 that the employee and the company are bound by the DRP.  The Court sees no inconsistencies

7 between the DRP and the ADRP, and the parties identify none.  Therefore, for purposes of this

8 motion, the Court will read the DRP and the ADRP as constituting a single unified agreement to

9 arbitrate, which the Court will refer to as the "UDRP," i.e., Unified Dispute Resolution Program.[2]

10     *Defendant's Arguments*

11      CCS argues that there is a binding arbitration agreement between itself and Ruiz that

12 covers Ruiz's claims.  CCS avers that Ruiz agreed through the UDRP to submit her claims against

13 CCS to binding arbitration.  The UDRP applies to CCS as a subsidiary of CBS and was signed

14 electronically by Ruiz either during the application process or during the employment process.

15 The UDRP requires Ruiz and CCS to arbitrate their disputes against each other, which shows

16 mutual consideration.  Furthermore, though CCS has the right to amend or terminate the DRP, it

17 may only do so on the thirty days' notice and only prospectively, which prevents CCS from

18 avoiding its obligation to arbitrate disputes.  CCS argues that the UDRP uses broad language that

19 covers disputes regarding Ruiz's employment and the terms of employment, as well as any

20 violations of state law by CCS.  Because Ruiz is alleging claims under the Labor Code and the

21 UCL based on a failure to reimburse business related personal phone, internet, and electric costs,

22 these claims are covered by the UDRP.

23      CCS also argues that Ruiz has waived her right to initiate or participate in a class action.

24 Despite this waiver, Ruiz brings a purported class action.  In light of the DRP's plain prohibition

25 against the arbitration of a class claim on behalf of others, Ruiz should be compelled to resolve her

26 dispute on an individual basis in arbitration.

27

28 [2] The Court notes that even if the DRP and the ADRP are two separate agreements, the terms are materially identical, and the result of the motion would not change – arbitration would still be ordered.

1    *Plaintiff's Opposition*

2        Ruiz argues that CCS's motion should be denied for several reasons.

3        First, the general rule is that one must be a party to an arbitration agreement to be bound by

4    it or to invoke it.  Ruiz argues that CCS is her employer and is not a signatory to the UDRP.  The

5    UDRP applies to CBS.  There no facts alleged in the Complaint, such as CCS and CBS being joint

6    employers, that would justify CCS enforcing the UDRP as a non-signatory.  Moreover, based on

7    the language of the UDRP, Ruiz argues that she believed that the UDRP applied only to CBS and

8    not to her employer, CCS.  Therefore, there is no basis for CCS to enforce the UDRP.

9        Second, and alternatively, the UDRP is unenforceable because it is illusory.  An

10   employer's unrestricted right to amend, modify, or terminate an arbitration agreement at any time

11   renders the agreement illusory and unenforceable.  The UDRP gave CCS, but not employees, the

12   right to modify and terminate.  Further, while the UDRP purport to force CCS to provide 30 days'

13   notice, other documents given to Ruiz explained that CCS had the right to unilaterally change

14   policies without notice.  When read together, the other acknowledgments signed by Ruiz are

15   contradictory to the UDRP.  Because ambiguities are resolved against the drafter, the ambiguity

16   must be resolved to make the UDRP illusory and unenforceable.

17       Third, the UDRP is unconscionable.  In terms of procedural unconscionability, the UDRP

18   is a contract of adhesion.  Ruiz argues that she could not refuse to sign and could not negotiate any

19   terms.  Rather, she had to accept the UDRP as a condition of employment.  Further, the UDRP

20   fails to provide all the AAA and JAMS rules governing the arbitration process.  These two

21   considerations create a high degree of procedural unconscionability.  In terms of substantive

22   unconscionability, there are several problematic aspects of the UDRP.  First, CCS is not a party to

23   the UDRP, which makes it is substantively unconscionable for CCS to invoke the UDRP's terms.

24   Second, and relatedly, only Ruiz and not CCS is required to arbitrate potential claims and only

25   Ruiz is required to sign the agreements.  Third, CCS's unrestricted unilateral right to modify or

26   terminate the UDRP is substantively unconscionable because the clauses render the UDRP

27   illusory.  Fourth, the UDRP contains waivers of representative claims, i.e., California Private

28   Attorneys General Act ("PAGA") (Cal. Civ. Code § 2699) claims.  Courts recognize that these

waivers are substantively unconscionable.  Fifth, and finally, the UDRP leaves discovery to the discretion of the arbitrator, who could then improperly limit discovery.  Courts recognize that arbitration agreements that unduly limit discovery are substantively unconscionable.  Taken together, the procedurally and substantively unconscionable provisions of the UDRP are sufficient to decline enforcement and are too numerous to be saved through severance.

*Discussion*

As an initial matter, there is no dispute regarding the scope of UDRP.  The ADRP covers all "disputes" (as defined by the DRP) "arising out of, relating to, or concerning [Ruiz's] employment with "Conduent," or the terms and conditions of employment with "Conduent." See Odle Dec. Ex. 4.  Similarly, the DRP is intended to resolve all "disputes" between the "Company" and CBS employees "arising out of a current . . . relationship with CBS." Id. at Ex. 1.  The terms "arising out of" or "relating to" are broad terms. Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922 (9th Cir. 2011).  Moreover, "disputes" is broadly defined to include legal and equitable claims, including statutory or common law claims, with respect to the terms and conditions of employment and employee benefits or incidents of employment. See Odle Dec. Ex. 1.  Given these considerations, the claims in the Complaint, which are based on the failure by CCS to reimburse Ruiz for business related personal expenditures are clearly "disputes" as defined by the UDRP that "arise out of" or "relate to" Ruiz's employment, benefits, and terms and conditions of her employment.  Instead of "scope," the issues raised by Ruiz to avoid arbitration involve contract formation and the validity of the UDRP.

1.    Formation

Ruiz argues that there is no valid agreement to arbitrate between her and CCS because CCS did not sign the UDRP and because the UDRP being illusory.  The Court will address each argument separately.

a.    Non-Signatory CCS

Ruiz is correct that, generally, an entity must be a party to an arbitration agreement to be bound by the agreement or to invoke it. See Garcia v. Pexco, LLC, 11 Cal.App.5th 782, 785 (2017); Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., 129 Cal.App.4th

759, 763 (2005); see also Cohen v. TNP 2008 Participating Notes Program, LLC, 31 Cal.App.5th 840, 856 (2019) ("Someone who is not a party to a contractual arbitration provision generally lack standing to enforce it.").  However, the Court cannot agree that CCS is not a party to the UDRP.

The DRP indicates that it is an agreement between applicants and employees, including Ruiz, and the "Company," the "Sponsor," and CBS.  See Odle Dec. Ex. 1.  As quoted above, "Company" is defined as the "Sponsor and every subsidiary (first tier and downstream) of Sponsor . . ."  Id.  In turn, "Sponsor" is defined to be CBS.  Id.  Finally, CBS is defined as CBS and its subsidiaries and/or their predecessors.  Id.  From these definitions, "Company," "Sponsor," and CBS are different ways of referring to the same entities – CBS and its subsidiaries.  Similarly, the ADRP indicates that it is an agreement between Ruiz and "Conduent" and expressly states that "I understand that references in this [ADRP] to Conduent include all Conduent Business Services and its subsidiaries . . ."  Odle Dec. Ex. 4.  That is, the ADRP's reference to "Conduent" means CBS and its subsidiaries.  Because the UDRP's constituent parts each expressly stated that all relevant references to CBS, Conduent, Sponsor, or Company is to mean CBS and its subsidiaries, all obligations and powers under the UDRP run to Ruiz, CBS, and CBS's subsidiaries.  Although there is not a signature block for CCS or CBS in the UDRP, the language and defined terms make it clear that CBS and CBS's subsidiaries are parties to the agreement/policy.  Cf. Reigelsperger v. Siller, 40 Cal.4th 574, 579 (2007) (holding that lower court ruling was contrary to the plain language of the arbitration contract); AIU Ins. Co. v. Superior Ct., 51 Cal.3d 807, 822 (1990) (explaining that, pursuant Cal. Civ. Code §§ 1638 and 1644, the clear and explicit meaning of a contractual provision, interpreted in the ordinary and popular sense unless used in a special or technical sense, controls judicial interpretation).  Because there is no dispute that CCS is a wholly owned subsidiary of CBS, CCS is a party to the UDRP.

Ruiz cites no authority that would invalidate either the UDRP as a whole, or the DRP and ADRP individually, as between herself and CCS merely because CCS is not explicitly identified by name.  As discussed above, the plain language of the UDRP shows that it is the policy of CBS and all of CBS's subsidiaries.  A reasonable person reading these agreements would understand that the UDRP does not apply to CBS alone.  See AIU Ins., 51 Cal.3d at 822.  Moreover,

1  considering that CCS's name is similar to CBS's name, that CBS's name appeared in documents

2  associated with both the application and employment process, and that Ruiz was required to

3  acknowledge the ADRP (which incorporated the DRP by reference) after being told that CCS

4  would be her employer, these facts all point to the conclusion that CCS was either a subsidiary of

5  CBS or had some connection to CBS such that CCS would be relying on the UDRP.  Given the

6  express language of the UDRP, as well as the context in which Ruiz viewed, acknowledged, and

7  accepted the DRP and the ADRP, it is unreasonable to conclude that the UDRP would apply to

8  CBS alone.  It makes no sense for an employer to make an employee sign an arbitration agreement

9  that does not actually apply to the employer, even though the agreement is meant to cover disputes

10  arising out of the employment relationship. In sum, the Court rejects Ruiz's argument that CCS is

11  not a party to the UDRP.

12               b.    Illusory Contract

13        A contract will be held to be unenforceable as illusory when one of the parties has the

14  unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations under

15  the contract.  See State Farm Gen. Ins. Co. v. Watts Regulator Co., 17 Cal.App.5th 1093, 1103

16  (2017); Harris v. TAP Worldwide, LLC, 248 Cal.App.4th 373, 385 (2016); see also Asmus v.

17  Pacific Bell, 23 Cal.4th 1, 15-16 (2000).

18        The Court does not find that the UDRP is illusory.  It is true that only CCS (or CBS) has

19  the authority to modify or terminate the UDRP.  However, before modification or termination can

20  occur, CCS is required to give Ruiz 30 days' notice.  See Odle Dec. Exs. 1, 4.  Furthermore, the

21  modification will not affect any "disputes" made known to CCS before the modification takes

22  effect, and termination will not affect "disputes" that either accrued or were made known to CCS

23  before the termination takes effect.  See id.  In other words, once CCS gives an employee 30 days'

24  notice of a modification to, or termination of, the UDRP, to preserve the existing agreement, the

25  employee need only tell CCS about a "dispute" before the modification or termination takes effect.

26  These are limits on CCS's ability to modify or terminate the UDRP.  The California Supreme

27  Court has recognized that "the fact that one party reserves the implied power to terminate or

28  modify a unilateral contract is not fatal to its enforcement, if the exercise of that power is subject

11

1  to limitation, such as fairness and reasonable notice."  Asmus, 23 Cal.4th at 16; Harris, 248

2  Cal.App.4th at 388; cf. Casas v. Carmax Auto Superstores Cal., LLC, 224 Cal.App.4th 1233, 1236

3  (2014).  Moreover, the implied covenant of good faith and fair dealing applies to discretionary

4  clauses like the UDRP's modification and termination clauses.  See Harris, 248 Cal.App.4th at

5  388; Peng v. First Republic Bank, 219 Cal.App.4th 1462, 1473-74 (2013); Serpa, 215 Cal.App.4th

6  at 708; 24 Hour Fitness v. Superior Ct., 66 Cal.App.4th 1199, 1214 (1998).  The covenant of good

7  faith and fair dealing prevents CCS or CBS from unilaterally exercising their discretionary

8  authority of modification or termination in such a manner as to frustrate the purpose of the UDRP,

9  and thus, prevents the UDRP from being deemed illusory.  See Harris, 248 Cal.App.4th at 388;

10 Peng, 219 Cal.App.4th at 1473-74; Serpa, 215 Cal.App.4th at 708; 24 Hour Fitness, 66

11 Cal.App.4th at 1214; see also Fuentes v. Empire Nissan, Inc., --- Cal.App.5th ---, 2023

12 Cal.App.LEXIS 310, *24 (2023).  Therefore, the express limits within the UDRP's modification

13 and termination provisions, combined with the limitations imposed by the implied covenant of

14 good faith and fair dealing, are sufficient to show that the UDRP is not illusory.[3]

15     Ruiz argues that other documents (the offer letter/the offer acknowledgment and the

16 policies acknowledgment) state that CCS's policies may be changed at any time without notice,

17 which means that there are no limits on the ability of CCS to change the terms of the UDRP.  Ruiz

18 is correct that CCS has represented that it can change its policies without notice.  However, those

19 are general statements that are not specific to any individual policy, particularly the UDRP.  In

20 contrast, the UDRP contains specific modification and termination provisions that apply only to

21 that agreement/policy.  See Odle Dec. Exs. 1, 4.  Under California law, it is the specific

22 modification and termination provisions contained within the UDRP that govern and control any

23 modifications or terminations of that agreement/policy, not the general statements identified by

24

25 [3] As Ruiz correctly points out, at least one California court has held that an agreement to arbitrate is illusory if the
   employer can make unilateral modifications.  Sparks v. Vista Del Mar Child & Family Services, 207 Cal.App.4th
26 1511, 1523 (2012).  Sparks, however, has been distinguished and criticized on this point.  See Harris, 248 Cal.App.4th
   at 386-90; Casas v. Carmax Auto Superstores Cal., LLC, 224 Cal.App.4th 1233, 1236 (2014); Serpa v. California
27 Surety Investigations, Inc., 215 Cal.App.4th 695, 708 (2013).  In fact, the same appellate district that decided Sparks
   reconsidered it and found to the contrary in light of Asmus and subsequent disagreement from other courts of appeal.
28 See Harris, 248 Cal.App.4th at 390.  Given the Court's above analysis, as well as Harris's disavowing of Sparks, the
   Court declines to follow Sparks.

Ruiz in other documents.  See Harris, 248 Cal.App.4th at 386-87.  Thus, as acknowledged by CCS

in its reply, see Doc. No. 12 at 4:23-5:6, the generalized statements of CCS's ability to change

policies without notice has no application to the UDRP.  See Harris, 248 Cal.App.4th at 386-87.

Thus, the UDRP is not unenforceable as illusory.

        2.     Unconscionability

        Unconscionability is a recognized basis to invalidate an arbitration agreement.  See Lim v.

TForce Logistics, LLC, 8 F.4th 992, 999 (9th Cir. 2021); Poublon v. C.H. Robinson Co., 846 F.3d

1251, 1259 (9th Cir. 2017).  The party opposing arbitration has the burden of establishing that an

arbitration agreement is unconscionable.  See Lim, 8 F.4th at 999; Poublon, 974 F.3d at 1060.

State law determines whether an agreement is invalid due to unconscionability.  See Shivkov v.

Artex Risk Sols., Inc., 974 F.3d 1051, 1059 (9th Cir. 2020); Kilgore v. KeyBank Nat'l Ass'n, 718

F.3d 1052, 1058 (9th Cir. 2013).  Under California law, unconscionability has a procedural

element and a substantive element.  See OTO, LLC v. Kho, 8 Cal.5th 111, 125 (2019); Iyere, 87

Cal.App.5th at 759; see also Lim, 8 F.4th at 1000-01; Poublon, 846 F.3d at 1260-61.  The

procedural element addresses the circumstances of contract negotiation and formation, focusing on

oppression and surprise due to unequal bargaining power, while the substantive element pertains

to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh

or one-sided.  OTO, 8 Cal.5th at 125; see Lim, 8 F.4th at 1000-01; Poublon, 846 F.3d at 1260-61;

Iyere, 87 Cal.App.5th at 759.  While both the procedural and substantive elements must be present

to establish unconscionability, they need not be present in the same degree.  Lim, 8 F.4th at 1000;

Poublon, 846 F.3d at 1260; OTO, 8 Cal.5th at 125; Baltazar v. Forever 21, Inc., 62 Cal.4th 1237,

1243 (2016).  There is essentially a "sliding scale" that applies, and the more one element is

present, the less present the other element need be.  See Lim, 8 F.4th at 1000; Poublon, 846 F.3d at

1260; OTO, 8 Cal.5th at 125-26; Baltazar, 62 Cal.4th at 1243-44; Iyere, 87 Cal.App.5th at 759.

        a.     Procedural Unconscionability

        The procedural unconscionability analysis begins by determining whether the agreement is

a contract of adhesion, which is a standardized contract offered by the party with superior

bargaining power on a take-it-or-leave-it basis.  OTO, 8 Cal.5th at 126; see also Lim, 8 F.4th at

1000-01; Poublon, 846 F.3d at 1260-61.  If a contract is one of adhesion, courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required.  See OTO, 8 Cal.5th at 126. "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."  Id. Employment contracts are typically contracts of adhesion.  Id.  However, "if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforced unless the degree of substantive unconscionability is high.'"  Poublon, 846 F.3d at 1261 (citation omitted).

There is no dispute that the UDRP is a contract of adhesion.  Ruiz was required to sign as a condition of employment and had not ability to opt out or renegotiate the UDRP's terms.  This is sufficient to show at least some procedural unconscionability.  See Poublon, 846 F.3d at 1261-62; Ramirez v. Charter Communications, Inc., 75 Cal.App.5th 365, 373 (2022).

Ruiz contends that although the UDRP references JAMS and the AAA, the rules of those institutions is not provided, which is procedurally unconscionable.  The Court disagrees.  In *Baltazar*, the California Supreme Court found that its procedural unconscionability analysis was unaffected by the fact that the defendant did not provide a copy of the AAA rules to the plaintiff. See Baltazar, 62 Cal.4th at 1246.  *Baltazar* left open the possibility that there may be procedural unconscionability based on "artfully hidden" terms within documents incorporated by reference, including terms hidden within an arbitrator's rules.  See id.  However, like the plaintiff in *Baltazar*, Ruiz does not identify any applicable rule of either the AAA or JAMS that is somehow surprising or unconscionable.  Therefore, the fact that CCS did not provide Ruiz with copies of the AAA or JAMS rules does not show any additional procedural unconscionability.  See id. Thus, there is a degree of procedural unconscionability because the UDRP is a contract of adhesion.

            b.      Substantive Unconscionability

Substantive unconscionability examines the fairness of a contract's terms and is concerned about terms that are unreasonably favorable to the more powerful party.  Lim, 8 F.4th at 1001-02; OTO, 8 Cal.5th at 129.  "Unconscionable terms impair the integrity of the bargaining process or

otherwise contravene the public interest or a public policy or attempt to impermissibly alter fundamental legal duties.  They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations."  OTO, 8 Cal.5th at 130 (quoting Sonic-Calabasas A, Inc. v. Moreno, 57 Cal.4th 1109, 1145 (2013)); see Gostev v. Skillz Platform, Inc., 88 Cal.App.5th 1035, 1054 (2023).  "Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive."  OTO, 8 Cal.5th at 130.

Ruiz argues that the UDRP is unconscionable because it:  (1) permits non-signatory CCS to force arbitration; (2) lacks mutuality because it permits CCS to invoke arbitration against Ruiz, but not vice versa; (3) is illusory because of CCS's unilateral ability to modify or terminate the agreement; (4) improperly limits discovery, and (5) contains an unlawful PAGA waiver.  The Court will address each point separately.

### (i)   Non-Signatory

Ruiz's argument that it is unconscionable to permit CCS as a non-signatory to invoke the UDRP is unpersuasive for two reasons.  First, California recognizes exceptions to the general rule that non-parties/non-signatories cannot invoke and enforce an arbitration agreement.  See Westra, 129 Cal.App.4th at 765.  Thus, there is nothing *per se* unconscionable about a non-signatory having the ability to enforce an arbitration agreement.  Second, and more importantly, the Court has concluded that the UDRP is an agreement by and policy of CBS and all of its subsidiaries, including CCS.  Therefore, by the terms of the UDRP itself, CCS is a party to the UDRP.  Ruiz's contention to the contrary is inaccurate.

### (ii)   Non-Mutuality in Application

The Court understands Ruiz to argue that, if CCS is granted the ability to compel arbitration against Ruiz despite being a non-signatory, then Ruiz will not have the ability to compel arbitration against CCS.  This argument is specious.  As explained above, every time that the UDRP used the term "Company," "CBS," "Sponsor," or "Conduent," the UDRP was referring to CBS and its subsidiaries, including CCS.  Further, the definition of "dispute" includes claims

1  between parties to the UDRP without reference to which party is asserting the claim/dispute.

2  Thus, per the express terms of the UDRP, both Ruiz and CCS as CBS's subsidiary can force

3  arbitration of any "dispute" that they may have against each other.  That is, Ruiz can force CCS to

4  arbitrate, and CCS can force Ruiz to arbitrate.

5  (iii)   <u>Illusory Terms</u>

6        Ruiz reiterates her argument that the UDRP's modification and termination clauses are

7  illusory terms, and as illusory terms, are unconscionable.  For the reasons discussed above, the

8  terms are not illusory.  Thus, the modification and termination clauses are not substantively

9  unconscionable.  <u>See</u> <u>Peng</u>, 219 Cal.App.4th at 1474.

10  (iv)   <u>Limitations on Discovery</u>

11        In pertinent part, the UDRP states that the "arbitrator shall have discretion to determine the

12  form, amount and frequency of discovery by the Parties," and "[d]iscovery may take any form

13  permitted by the Federal Rules of Civil Procedure, as amended from time to time, subject to any

14  restrictions imposed by the arbitrator."  Odle Dec. Ex. 4.  Ruiz argues that the UDRP does not

15  adequately address discovery, but instead leaves discovery in the hands of the arbitrator who could

16  impose improper limits.

17        Certain limitations on discovery in the arbitration process is an appropriate method of

18  streamlining the arbitration process – the full panoply of judicial discovery is not required.  <u>See</u>

19  <u>Armendariz v. Foundation Health Psychcare Services, Inc.</u>, 24 Cal.4th 83, 105-06 (2000); <u>Epstein</u>

20  <u>v. Vision Service Plan</u>, 56 Cal.App.4th 223, 246 (2020); <u>Sanchez v. Carmax Auto Superstores</u>

21  <u>Cal., LLC</u>, 224 Cal.App.4th 398, 404 (2014); <u>Martinez v. Master Protection Corp.</u>, 118

22  Cal.App.4th 107, 118 (2004).  Having limits on discovery is a hallmark of arbitration, and the

23  mere fact that there are limits does not make an arbitration agreement *per se* substantively

24  unconscionable.  <u>See</u> <u>Coast Plaza Doctors Hosp. v. Blue Cross of Cal.</u>, 83 Cal.App.4th 677, 689-

25  90 (2000).  As long as the limited discovery procedures adequately allow a plaintiff to vindicate

26  her rights, the limited discovery is not unconscionable.  <u>See</u> <u>Armendariz</u>, 24 Cal.4th at 105-06;

27  <u>Sanchez</u>, 224 Cal.App.4th at 404; <u>Martinez</u>, 118 Cal.App.4th at 118-19.  To show substantive

28  unconscionability, the plaintiff must show that the discovery procedures are inadequate under the

16

1  circumstances of her case.  See Ramirez, 75 Cal.App.5th at 385; Sanchez, 224 Cal.App.4th at 405;

2  Martinez, 118 Cal.App.4th at 118-19.

3       In this case, the UDRP contain no express limits or prohibitions of any kind on discovery.

4  Instead, it gives the arbitrator substantial discretion regarding the form, amount, and type of

5  discovery that should occur.  The terms of the UDRP reasonably show, through both its general

6  application of the Federal Rules of Civil Procedure as well as the discovery provisions' express

7  references to discovery under the Federal Rules of Civil Procedure, that the arbitrator is to be

8  guided by the discovery provisions of the Federal Rules of Civil Procedure.  Moreover, since it is

9  presumed that an arbitrator "will operate in a reasonable manner in conformity with the law,"

10 Murrey v. Superior Ct., 87 Cal.App.5th 1223, 1250 (2023); Torrecillas v. Fitness Int'l, LLC, 52

11 Cal.App.5th 485, 497 (2020); Dotson v. Amgen, Inc., 181 Cal.App.4th 975, 984, 986 (2010), the

12 Court assumes that the arbitrator will be aware that the law requires adequate discovery and that

13 his or her discovery decisions will be guided by California law and the discovery provisions of the

14 Federal Rules of Civil Procedure.  See Dotson, 181 Cal.App.4th at 984, 986.

15      Importantly, Ruiz does not explain how the discovery provisions of the UDRP will be

16 inadequate for her to vindicate her claims.  Indeed, Ruiz's claims appear to be straightforward, and

17 it is not clear what discovery Ruiz would need, that she cannot obtain in the arbitration process, to

18 vindicate her statutory rights.  Ruiz claims a violation of Labor Code § 2802 and a derivative UCL

19 claim.  Ruiz claims that she was never reimbursed by CCS for business related expenses that she

20 had to pay personally.  Ruiz should have access to the documentation for the expenses that she

21 incurred, be able to explain why they were business related, be able to explain why she is entitled

22 to reimbursement, and state that she was never reimbursed.  This would seem to be all that is

23 necessary to demonstrate an entitlement to relief under § 2802; additional information or evidence

24 in CCS's possession would seem to be unnecessary.  See Cal. Lab. Code § 2802(a).  Therefore,

25 Ruiz has failed to show how the UDRP's discovery provisions are substantively unconscionable in

26 her circumstances.[4]  Ramirez, 75 Cal.App.5th at 385; Sanchez, 224 Cal.App.4th at 405; Martinez,

27

28 [4] The Court recognizes that the Complaint makes class action allegations, as well as PAGA allegations.  As discussed below, the class action allegations will be dismissed, the "individual PAGA claim" will be sent to arbitration, and the "representative PAGA claim" will remain stayed in this case.

1   118 Cal.App.4th at 118-19.  Thus, Ruiz has failed to show that the UDRP's discovery provisions

2   are substantively unconscionable.

3                              (v)      PAGA Waiver

4          PAGA permits an aggrieved employee,[5] on behalf of himself and other current or former

5   aggrieved employees, and as a proxy on behalf of the State of California, to bring suit to recover

6   various statutory penalties provided under the California Labor Code.  See Cal. Lab. Code §

7   2699(a); Viking River Cruises, Inc. v. Moriana, 142 S.Ct. 1906, 1916 (2022); Arias v. Superior

8   Ct., 46 Cal.4th 969, 980-81, 986 (2009).  Due to FAA preemption, a PAGA claim can be divided

9   into individual and non-individual claims through an agreement to arbitrate.  See Viking River,

10  142 S.Ct. at 1924.  A PAGA claim that is based on Labor Code violations that a plaintiff

11  personally suffered (often called an "individual PAGA claim") may be sent to arbitration.  See

12  Viking River, 142 S.Ct. at 1924-25; Piplack v. In-N-Out Burgers, 88 Cal.App.5th 1281, 1287-88

13  (2023); Galarsa v. Dolgen Cal., LLC, 88 Cal.App.5th 639, 648-52 (2023); Mills v. Facility

14  Solutions Grp., Inc., 84 Cal.App.5th 1035, 1063 (2022).  A PAGA claim that is based on an

15  employee's ability to recover for Labor Code violations suffered by other aggrieved employees

16  (often called a "representative PAGA claim") cannot be waived by an arbitration agreement

17  because to do so violates California public policy.  See Viking River, 142 S.Ct. at 1924-25;

18  Piplack, 88 Cal.App.5th at 1287-88; Galarsa, 88 Cal.App.5th at 648-52; Mills, 84 Cal.App.5th at

19  1063.

20         The UDRP waives Ruiz's right to initiate or participate in any representative action.  See

21  Odle Dec. Exs. 1, 4.  This is a broad waiver that appears to capture representative PAGA claims.

22  See id.  Such a waiver would be invalid as contrary to California's public policy.  See Viking

23  River, 142 S.Ct. at 1924-25; Piplack, 88 Cal.App.5th at 1287-88; Galarsa, 88 Cal.App.5th at 648-

24  52; Mills, 84 Cal.App.5th at 1063.

25         In reply, however, CCS states that the UDRP through § 2(E) of the DRP provides that

26  "[d]isputes do not include, and the DRP does not apply to, claims . . . (3) where application of the

27  _____

28  [5] An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged [Labor Code] violations was committed."  Cal. Lab. Code § 2699(c).

1   DRP is otherwise prohibited by law." Odle Dec. Ex. 1. CCS argues that if the law prohibits

2   waivers of PAGA representative claims, then the UDRP does not apply to PAGA representative

3   claims by the plain language of § 2(E). The Court has considered the quoted section of the UDRP

4   (which is part of the definition of "Dispute" in the DRP) and finds that CCS's argument and

5   interpretation is reasonable. Waivers of the ability to bring PAGA representative claims are

6   unlawful. Therefore, the Court accepts CCS's interpretation and finds that PAGA representative

7   claims are specifically exempted from the UDRP's waiver provisions through application of

8   § 2(E) of the DRP, *Viking River*, *Piplack*, *Galarsa*, and *Mills*. Since PAGA representative claims

9   are not subject to the UDRP's waiver provision, there is no substantive unconscionability.[6]

10          3.      Class Action Waiver

11          The UDRP requires that all covered claims be submitted and arbitrated on an individual

12   basis and expressly waives Ruiz's rights to initiate or participate in class actions. See Odle Dec.

13   Exs. 1, 4. An arbitration agreement may contain an enforceable waiver that waives the right to

14   initiate or participate in a class action. See AT&T Mobility v. Concepion, 563 U.S. 333, 351

15   (2011); Dhaliwal, 2023 U.S. Dist. LEXIS 45492 at *20, *24; Mills, 84 Cal.App.5th at 1062;

16   Evenskaas v. California Transit, Inc., 81 Cal.App.5th 285, 290, 297-98 (2022). Apart from

17   arguing that the UDRP as a whole is unconscionable, Ruiz does not contend that the class action

18   waiver is unenforceable or somehow inapplicable. Therefore, the Court will give effect to the

19   UDRP's class action waiver and dismiss all of Ruiz's class claims. See Concepion, 563 U.S. at

20   351; Dhaliwal, 2023 U.S. Dist. LEXIS 45492 at *24; Evenskaas, 81 Cal.App.5th at 297-98.

21          4.      PAGA Claim

22          There is an ambiguity in the Complaint regarding the presence of a PAGA claim. Though

23   the body of the Complaint does not mention PAGA, the prayer requests statutory and civil

24   penalties and attorneys' fees under Labor Code § 2699, which is a provision of PAGA, and

25   requests certification of all causes of action as a class action "except for any [PAGA] cause of

26   _____

27   [6] Alternatively, utilizing the UDRP's severance clause to sever the aspect of the UDRP that attempts to prohibit Ruiz
     from pursuing a representative PAGA claim is proper. The waiver of a representative PAGA claim is the only aspect
     of the UDRP that Ruiz has shown to be substantively unconscionable. Severing this single aspect of the UDRP,
28   which affects a single statutory claim, maintains the central purpose of the UDRP and allows the remainder of the
     UDRP to be enforced. See Viking River, 142 S.Ct. at 1925; Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 1076 (2003).

action."  The first cause of action alleges a violation of Labor Code § 2802, which is a sufficient statutory predicate for a PAGA claim.  See Whitlach v. Premier Valley, 86 Cal.App.5th 673, 704 (2022).  Given the language of the prayer, as well as the § 2802 cause of action, it is uncertain whether Ruiz is attempting to allege a PAGA claim.

As discussed above, an individual PAGA claim is subject to arbitration.  To the extent that Ruiz is attempting to bring an "individual PAGA claim," that claim will be sent to arbitration.  See Viking River, 142 S.Ct. at 1924-25; Piplack, 88 Cal.App.5th at 1287-88; Galarsa, 88 Cal.App.5th at 648-52; Mills, 84 Cal.App.5th at 1063.  However, the "representative PAGA claim" is not subject to waiver, see id., but the UDRP mandates that all "disputes" be arbitrated on an individual basis.  See Odle Dec. Ex. 1; cf. Viking River, 142 S.Ct. at 1924-25.

Once the *Viking River* majority divided the PAGA claim, it examined California law and held that severing the individual PAGA claim resulted in the loss of the plaintiff's standing to pursue a representative PAGA claim.  Citing *Kim v. Reins Int'l*, 9 Cal.5th 73 (2020), *Viking River* explained: "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit.  As a result, [plaintiff] lacks statutory standing to maintain her [representative claims], and the correct course is to dismiss her remaining claims."  Viking River, 142 S.Ct. at 1925.  In her concurring opinion, Justice Sotomayor noted that the dismissal of the representative PAGA claim was based on the Supreme Court's reading of California law, and that if the understanding was wrong, "California courts, in an appropriate case, will have the last word."  Id. (Sotomayor, J., concurring).

Since *Viking River* was issued, at least two California appellate courts have concluded that *Viking River*'s understanding of California law is incorrect.  See Piplack, 88 Cal.App.5th at 1290-93; Galarsa, 88 Cal.App.5th at 652-55.  Additionally, the California Supreme Court is currently considering PAGA standing requirements in the context of *Viking River*.  See Adolph v. Uber Techs., Inc., No. S274671, 2022 Cal. LEXIS 5021.  Considering the pendency of *Adolph*, and the reasoning of *Piplack* and *Galarsa*, the Court finds that the appropriate course is to stay the pendency of Ruiz's representative PAGA claim. Dhaliwal, 2023 U.S. Dist. LEXIS 45492 at *24;

1   *Valencia v. Mattress Firm, Inc.*, 2023 U.S. Dist. LEXIS 26863, *10 (N.D. Cal. Feb. 16, 2023).

2       4.    <u>Conclusion</u>

3       CCS has moved to compel arbitration of Ruiz's claims.  As discussed above, the UDRP is

4   a valid arbitration agreement between CCS and Ruiz, and the Labor Code § 2802, UCL, and

5   individual PAGA claims are within the scope of the UDRP.  Under these circumstances, the Court

6   must grant CCS's motion and order the parties to arbitration.  Further, given the validity of the

7   UDRP and Ruiz's failure to address the class action waiver provision of the UDRP, the Court will

8   dismiss all class claims in the Complaint.  Finally, the Court will stay this matter, including the

9   PAGA representative claim, pending the California Supreme Court's resolution of *Adolph*.

10

11   **<u>ORDER</u>**

12       Accordingly, IT IS HEREBY ORDERED that:

13   1.    Defendant's motion to compel arbitration (Doc. No. 6) is GRANTED.

14   2.    Plaintiff's class action claims are DISMISSED.

15   3.    The parties SHALL SUBMIT all remaining claims pending in this matter to arbitration in

16       accordance with the UDRP, except for Plaintiff's representative PAGA claim. **<u>Within</u>**

17       **<u>three days, Ruiz SHALL file a "notice of clarification," which explains whether she is</u>**

18       **<u>asserting PAGA claims in the Complaint</u>**.

19   4.    Plaintiff's representative PAGA claim shall remain pending in this Court until the

20       California Supreme Court issues a decision in *Adolph v. Uber Techs., Inc.*

21   5.    Within 30 days of issuance of the decision in *Adolph v. Uber Techs., Inc.*, the parties shall

22       file a notice of decision regarding *Adolph*, a joint request to lift the stay, and either a joint

23       status report or stipulation regarding how the case should proceed in light of the *Adolph*

24       decision;[7] and

25   ///

26   ///

27   ///

28

[7] The failure of the parties to comply with this notice requirement will result in sanctions and/or dismissal.

6.      The Clerk shall STAY this case.

IT IS SO ORDERED.

    Dated:   **May 11, 2023**

                                          UNITED STATES DISTRICT JUDGE